IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACKSON C.,[1] ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. CIV-22-116-JFH-GLJ |
| ) | |
| DEPARTMENT OF IMMIGRATION ) | |
| CUSTOMS ENFORCEMENT; ) | |
| MERRICK B. GARLAND; and ) | |
| ALEJANDRO MAYORKAS, Secretary ) | |
| Secretary of Homeland Security, ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

This matter is a petition for habeas corpus under 28 U.S.C. § 2241 filed by alien detainee Jackson C.,[2] who is currently confined at the Prairieland Detention Center in Alvarado, Texas, although he was originally detained in the Moore Detention Center in Okmulgee, Oklahoma and was there at the time of the filing of this case. *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.") (*citing Ex Parte Endo*, 323 U.S. 283, 306

---

[1] Due to privacy concerns about the personal information often filed in § 2241 immigration detention habeas cases, the Court will identify Petitioner only by his first name and the first initial of his surname.

[2] Because Petitioner proceeds pro se, the undersigned Magistrate Judge will construe his filings liberally but will not serve as his advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

(1944)). The Petitioner challenges his detention by the United States Immigration and Customs Enforcement (ICE) pending a determination of his removal and seeks immediate release, damages, and other relief [Docket No. 7]. The Government has filed Federal Respondent's Response in Opposition to Petitioner's Petition for Writ of Habeas Corpus [Docket No. 9], which has been characterized as a Motion to Dismiss. Additionally, the Petitioner has moved for preliminary injunction, essentially requesting release for the same grounds as asserted in the Amended Petition [Docket No. 19].

The Court has referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction, pursuant to 28 U.S.C. § 636 [Docket No. 18]. For the reasons set forth below, the undersigned Magistrate Judge finds that Petitioner's Amended Petition for Writ of Habeas Corpus Pursuant to 2241; and Complaint for Declaratory and Injunctive Relief for Release from Unlawful Immigration Detention [Docket No. 7] should be GRANTED to the extent Petitioner is entitled to a *bona fide* bond hearing within thirty days where the Government bears the burden of proof by clear and convincing evidence, but denied as to all other relief requested. Additionally, the Federal Respondent's Response in Opposition to Petitioner's Petition for Writ of Habeas Corpus [Docket No. 9] and Petitioner's Motion for Preliminary Injunction Directing Release from Custody or in the Alternative for Expedited Determination of Habeas Corpus Petition [Docket No. 19] should be denied.

**Background**

Petitioner is a native and citizen of Tanzania who legally entered the United States around June 30, 2004. On June 3, 2018, officers responded to a domestic altercation at

Petitioner's home. When they arrived, an officer observed the Defendant choking his then-wife. The Petitioner struck an officer with a door and tried to run, but was caught and arrested. *See* Docket No. 9, Ex. 3, pp. 1-2. On November 26, 2019, Petitioner pleaded guilty to five counts of a six-count Information: (1) assault and battery of a police officer, in violation of 21 Okla. Stat. § 649(B); (2) domestic assault and strangulation, in violation of 21 Okla. Stat. § 644(J); (4) resisting an officer, in violation of 21 Okla. Stat. § 268; (5) obstructing an officer, in violation of 21 Okla. State § 540; and (6) domestic assault and battery, in violation of 21 Okla. Stat. § 644(C). *See* Docket No. 9, Ex. 2, pp. 1-7; Ex. 4, pp. 1-8. On December 6, 2019, the Court ordered a three-year suspended sentence and directed him to pay the corresponding fines. *Id.*, pp. 1-4. On August 20, 2021, the Tulsa County District Court issued a Notice of Termination of Active Probation Supervision, following twenty-one months of probation, indicating that he had successfully completed all supervision modules identified and the corresponding programs to address his crimogenic needs. *See* Docket No. 1, p. 6.

On or around August 25, 2021, Petitioner was detained and the Department of Homeland Security ("DHS") issued a "Notice to Appear," indicating Petitioner was removable based on his November 2019 convictions. *See* Docket No. 9, Ex. 1. Petitioner requested a custody redetermination, which Immigration Judge Christopher Thielemann denied on September 15, 2021, stating that Petitioner is subject to mandatory detention pursuant to sections 237(a)(2)(E), 237(a)(2)(A)(iii), and 212(a)(2(A)(i)(I) of the Immigration and Nationality Act ("INA"), which render an alien removable. *See* 8 U.S.C. §§ 1227(a)(2)(E) (crimes of domestic violence), 1227(a)(2)(A)(iii) (an aggravated felony),

3

1182(a)(2)(A)(i)(I) (crime of moral turpitude). *See also* 8 U.S.C. § 1226(c) ("The Attorney General *shall* take into custody any alien who . . . is deportable by reason of having committed any offense covered in section [] 1227(a)(2)(A)(iii) . . . when the alien is released[.]"). Judge Thielemann further found that Petitioner is a danger to the community. *See* Docket No. 9, Ex. 5. Petitioner appealed, and the Board of Immigration Appeals ("BIA") affirmed the denial of bond and dismissed Petitioner's Appeal on March 9, 2022. *Id.*, Ex. 6.

The Government indicates that an Immigration Judge held a hearing on May 4, 2022 on the merits of Petitioner's application for relief, then ordered Petitioner removed, and Petitioner appealed that decision, but neither party provided that decision, or a notice of appeal, to the Court. In their Response to the Petitioner's most recent motion for preliminary injunction, however, the Government attached as an exhibit[3] a September 30, 2022 order by the BIA dismissing Petitioner's appeal from the May 2022 decision denying his application for asylum and withholding of removal. *See* Docket No. 20, Ex. 1. The BIA found that Petitioner did not timely file his asylum application, and upheld the Immigration Judge's adverse credibility finding as to Petitioner. *Id.* The BIA further found that Petitioner failed to provide independent objective evidence supporting his claim that

---

[3] The Government originally cited the exhibit in its Response without attaching it but has since corrected the error.

he would be at risk of torture upon return to Tanzania. *Id.* It appears that Petitioner has appealed this decision to the Fifth Circuit in Case No. 22-60573, *Chiwanga v. Garland*.[4]

## Analysis

Petitioner challenges his detention for two reasons. First, he asserts that he has been detained for an unreasonable period of time without a bond hearing, and that he should be provided with a bond hearing or released. Additionally, he challenges his detention under 8 U.S.C. § 1226(c) "as applied" to him because he was not detained upon an immediate release from custody, which is required under the statute. At the root of his Petition, as well as his Motion for Preliminary Injunction, he is seeking release from custody. For the reasons set forth below, the undersigned Magistrate Judge finds Petitioner is entitled to a *bona fide* bond hearing, the only relief available in this case.

The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). "Congress, through the [INA], has authorized the DHS, through ICE, to enforce immigration law." *Perez-Ramirez v. Norwood*, 322 F. Supp. 3d 1169, 1171 (D. Kan. 2018) (*citing* 8 U.S.C. § 1226(a)). The INA authorizes the United States Attorney General to interview, arrest, and detain removable aliens already in the country pending a decision in removal proceedings. 8 U.S.C. § 1226(a).

---

[4] The Court may take "judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007).

Jurisdiction. "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts, and any circuit judge within their respective jurisdictions[.]" 28 U.S.C. § 2241(a). This remedy is available where the petitioner demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States[,]" including the immigration context. 28 U.S.C. § 2241(c)(3). *See also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these [immigration-related detention] cases."); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). And while 8 U.S.C. § 1226(e) "precludes an alien 'from challenging a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release,' it "does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'" *Jennings v. Rodriguez*, _ U.S. _, 138 S. Ct. 830, 841 (2018) (*quoting Demore v. Kim*, 538 U.S. 510, 516-517 (2003) (federal courts have jurisdiction to consider habeas corpus claims by aliens who challenge the constitutionality of their detention)). As the Third Circuit has said, "even after *Jennings*, an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause." *German-Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210 (3d Cir. 2020). *See also M.D.F. v. Johnson*, 2020 WL 7687137, at *2 (N.D. Tex. Nov. 10, 2020), *report and recommendation adopted in part, rejected in part*, 2020 WL 7090125 (N.D. Tex. Dec. 3, 2020) ("[While f]ederal courts lack subject-matter jurisdiction to review the Attorney General's

discretionary judgment to apprehend and detain aliens and the merits of removal orders, [section] 1226 do[es] not bar a federal court from considering an alien's constitutional challenges to continued detention.") (*citing Jennings*, 138 S. Ct. at 851 (2018) (remanding for determination of Section 1226 as-applied constitutional claims on the merits)).

Because the Court's jurisdiction extends only to a constitutional challenge to his continued detention (and not a decision to apprehend and detain him or a challenge to a removal order), *see Jennings*, 138 S. Ct. at 851, the only remedy available for a successful challenge in this case appears to be a bond hearing. *See Lopez Santos v. Clesceri*, 2021 WL 663180, at *4 (N.D. Ill. Feb. 19, 2021) ("Many courts have held that Fifth Amendment Due Process limits unreasonable detention under § 1226(c), and when the particular facts establish that the detention has become unreasonable, the Due Process clause affords the detainee an individualized bond hearing.") (*citing, inter alia, German Santos*, 965 F.3d at 210, *and Smith v. Barr*, 444 F. Supp. 3d 1289 (N.D. Okla. 2020) (requiring a bond hearing when civil detention lasted over thirty months)).

Petitioner asserts that he has been detained for an unreasonable period of time without a *bona fide* bond hearing and that he should not have been detained in the first place because he did not serve jail time for his convictions. He has been detained pursuant to the "mandatory detention provision" in 8 U.S.C. § 1226(c), which

> "carves out a statutory category of aliens who may not be released" during removal proceedings, outside of certain limited circumstances. Under section 1226(c), the government "shall take into custody" any noncitizen who is inadmissible or deportable based on, among other things, a conviction for certain crimes involving moral turpitude, controlled substance offenses, aggravated felonies, certain firearm offenses, or certain acts associated with terrorism. The statute allows release of a noncitizen properly subject to

7

mandatory detention under section 1226(c) "only for witness protection purposes and only [then] if the alien shows he is not a danger to the community or a risk of flight."

*Reid v. Donelan*, 17 F.4th 1, 4 (1st Cir. 2021) (*quoting Jennings*, 138 S. Ct. at 837 *and* 8 U.S.C. § 1226(c)(1)).  The Supreme Court has held that the explicit terms of the statute "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes."  *Jennings*, 138 S. Ct. at 847.  Here, Petitioner challenges his mandatory detention based on his convictions, asserting that his assault and battery conviction is the "sole reason" for his removal order.  As discussed above, this Court lacks jurisdiction over the Immigration Judge's finding that he is subject to removal.  However, this Court may review whether he is subject to mandatory detention based on his convictions in the context of the constitutionality of his continued detention.

The September 2021 summary form Order denying bond ordered mandatory detention based on Petitioner's convictions falling into the following categories: §§ 1227(a)(2)(E) (crimes of domestic violence), 1227(a)(2)(A)(iii) (an aggravated felony), 1182(a)(2)(A)(i)(I) (crime of moral turpitude).  *See* Docket No. 9, Ex. 5.  Under § 1226(c), however, only two of the three cited statutes fall under the mandatory detention provision: §§ 1227(a)(2)(A)(iii) (aggravated felony) and 1182(a)(2)(A)(i)(I) (crimes of moral turpitude).  *See* 8 U.S.C. § 1226(c)(1)(A) & (B).  The third, his conviction(s) for crimes of domestic violence, would purportedly render him subject to deportation under § 1227 but not to mandatory detention under § 1226(c) unless they fall into some other category of mandatory detention, *i.e.*, crimes of moral turpitude. *See* 8 U.S.C.A. § 1227(a)(3)(E)(k)

8

("Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable.").

Petitioner does not address the issue of crimes of moral turpitude in any of his briefing, but he asserts that his assault and battery conviction (presumably Count 1, assault and battery of a police officer) is not an aggravated felony under Tenth Circuit law. Indeed, the Tenth Circuit has held that an Oklahoma state law conviction for "battery on a law enforcement officer does not constitute a violent felony" under the Armed Career Criminals Act. *United States v. Johnson*, 911 F.3d 1062, 1073 (10th Cir. 2018). The undersigned Magistrate Judge is hesitant, therefore, to find this conviction an aggravated felony and that the mandatory detention provision applies on this basis alone. This leaves the question as to whether Petitioner has committed a crime of moral turpitude requiring mandatory detention.

"Whether a conviction constitutes a crime involving moral turpitude is a question of law," *Rodriguez-Heredia v. Holder,* 639 F.3d 1264, 1267 (10th Cir. 2011), as it is not defined by statute or regulation. "The Tenth Circuit has described moral turpitude as 'refer[ring] to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between man and man, either one's fellow man or society in general.'" *United States v. Zazi*, 356 F. Supp. 3d 1105, 1116-1117 (D. Colo. 2018) (*quoting Rodriguez-Heredia*, 639 F.3d at 1268). Furthermore, the Tenth Circuit has repeatedly upheld Immigration decisions finding that a domestic violence conviction constitutes a crime involving moral turpitude, so the undersigned Magistrate Judge has no

9

problem doing so here as well. *See Alonso-Bernabe v. Sessions*, 696 Fed. Appx. 920, 921 (10th Cir. 2017) (denying petition for review where Immigration Judge "held the conviction qualified as a crime of domestic violence that disqualified Mr. Alonso from cancellation of removal. He further held that the conviction was a crime involving moral turpitude (CIMT) that precluded Mr. Alonso from establishing good moral character for the purposes of voluntary departure."); *Portillo-Castro v. Holder*, 543 Fed. Appx. 815, 819 (10th Cir. 2013) ("The BIA reaffirmed the IJ's conclusion that Mr. Portillo–Castro 'did not meet his burden to prove that his Oklahoma criminal conviction for domestic assault and battery was not a CIMT.' Admin. R. at 4."); *Vaquero-Cordero v. Holder*, 498 Fed. Appx. 760, 762 n.1 (10th Cir. 2012) ("The [Immigration Judge] determined that petitioner's domestic violence conviction constituted a crime involving moral turpitude."). The undersigned Magistrate Judge thus finds that the mandatory detention provision in § 1226(c) applies to Petitioner.

<u>Challenge "as applied" to Detention Not Following a Release from Physical Custody</u>. Importantly, "[t]he Supreme Court has held that § 1226(c)'s mandatory detention provision applies even where the non-citizen subject to that detention is not arrested and detained immediately following their release from custody on criminal charges." *Perera v. Jennings*, 2022 WL 1128719, at *4 (N.D. Cal. Apr. 15, 2022) (*citing Nielsen v. Preap*, _ U.S. _, 139 S. Ct. 954, 959 (2019) ("[T]he United States Court of Appeals for the Ninth Circuit held that this mandatory-detention requirement applies only if a covered alien is arrested by immigration officials as soon as he is released from jail. If the alien evades arrest for some short period of time—according to respondents, even 24 hours is too long—

the mandatory-detention requirement is inapplicable, and the alien must have an opportunity to apply for release on bond or parole. Four other Circuits have rejected this interpretation of the statute, and we agree that the Ninth Circuit's interpretation is wrong.")). Thus, Petitioner's arrest only after the conclusion of his probation and not following a specific release from custody is insufficient, standing alone, to nullify the requirement of mandatory detention in § 1226(c). Accordingly, the undersigned Magistrate Judge finds Petitioner's "as applied" challenge to his detention is unavailing and should be dismissed. The undersigned Magistrate Judge now turns to whether Petitioner is entitled to relief in the form of a bond hearing on his Petition.

Challenge to Detention Without a Bond Hearing. In this case, the record reflects Petitioner *did receive* a bond hearing on September 15, 2021, less than thirty days after his detention began on August 25, 2021. However, there is nothing in the record indicating whether it was a *bona fide* hearing sufficient to satisfy constitutional due process protections. If there were, the analysis would end as that is the only relief available to Petitioner. Here, the Order of the Immigration Judge states that bond was denied due to mandatory detention for his domestic violence conviction, aggravated felony conviction, for committing a crime of moral turpitude, and that he is a danger to the community, but contains no information as to the depth of this hearing and, most importantly, no indication as to where the Immigration Judge placed the burden of proof. *See* Docket No. 9, Ex. 5.

Although neither the Supreme Court nor the Tenth Circuit have squarely addressed this issue, Courts that have addressed the burden of proof at these bond hearings have largely concluded that a *bona fide* bond hearing in these circumstances requires the

11

Government to bear the burden of proof by clear and convincing evidence. *See, e.g.*, *Omar M. v. Garland*, 2021 WL 3442337, at *4, 7 (D. Minn. Mar. 29, 2021) ("[D]ue process requires a burden of proof (on the government, by clear and convincing evidence) that was not applied at the first bond hearing. . . . [T]he government will bear the burden of proving that O.M. presents a danger to the community or a flight risk by clear and convincing evidence.") (*citing Frantz C. v. Shanahan*, 2018 WL 3302998, at *2-*3 (D.N.J. July 5, 2018) (explaining detainee was not entitled to a second bond hearing "absent some showing that his original bond hearing was not bona fide," and finding that original bond hearing, at which the government bore the burden of proof, was bona fide)). *See also Hernandez v. Wolf*, 2021 WL 406463, at *4 (D.N.J. Feb. 5, 2021) ("Petitioner received a *bona fide* bond hearing at which he was found to be a danger to the community and flight risk by clear and convincing evidence. . . . Given the immigration judge's finding that Petitioner was shown to be a flight risk and danger by clear and convincing evidence after a *bona fide* bond hearing, Petitioner has received the only process to which he is due under the constitution, and this Court finds no basis for ordering a second bond hearing, let alone the extreme relief of outright release unsupported by any caselaw which Petitioner requests."). *Cf. Ricardo Antonio G.-S. v. Cirillo*, 2021 WL 303025, at *3 (D.N.J. Jan. 28, 2021) ("To the extent Petitioner challenges the results of his bond hearings, absent a showing that [they] were] not *bona fide*, this Court is without authority to reconsider the decision[s] of the immigration judge denying Petitioner bond.") (quotations omitted). The two-page form Order from the Immigration Judge provides no indication as to what took place at this hearing, nor does it state who bore the burden of proof. It is thus not clear that Petitioner

has received a *bona fide* bond hearing sufficient for purposes of due process. The question then becomes whether Petitioner's detention has become unreasonable such that he is now entitled to a *bona fide* bond hearing.

Assuming that detention under § 1226(c) may become unreasonable and a violation of due process in some circumstances, *see, e.g.*, *M.D.F. v. Johnson*, 2020 WL 7090125, the undersigned Magistrate Judge turns to the general reasonableness analysis as required by *Demore* and *Jennings*. This "analysis is case-specific and multi-factored." *Id.*, 2020 WL 7090125, at *1 (N.D. Tex. Dec. 3, 2020) (*citing German Santos*, 965 F.3d at 210-213). While the Tenth Circuit has not squarely addressed this analysis, the Third Circuit has helpfully set out a "nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable": (1) "the duration of detention," (2) "whether the detention is likely to continue," (3) any reasons for delay, and (4) whether the "conditions of confinement are meaningfully different from criminal punishment." *German-Santos*, 965 F.3d at 211 (quotations and citations omitted). Based on these factors as discussed below, the undersigned Magistrate Judge finds that Petitioner has sufficiently established that his continued detention is unreasonable or arbitrary amounting to a violation of the Due Process Clause and that he is therefore entitled to a *bona fide* bond hearing.

**Length of detention.** In evaluating the length of detention, there is no bright-line rule; rather, the length of detention is to be assessed under a balancing test. *See Lopez Santos v. Clesceri*, 2021 WL 663180, at *5 (N.D. Ill. Feb. 19, 2021) ("The Supreme Court did not set a bright-line rule justifying detention under § 1226(c) after a certain number of

months. Instead, it has applied a traditional due process balancing test of factors.") (*citing Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (noting that the "flexible" nature of due process is best protected by a balancing test) and *Addington v. Texas*, 441 U.S. 418, 425 (1979) (balancing an individual's interest "in not being involuntarily confined indefinitely" against state interests in the context of a civil commitment proceeding)). As of the writing of this Report and Recommendation, Petitioner has been detained well over fifteen months, and at least sixteen months will have passed when the time for objections has expired. In 2003, the Supreme Court stated in *Demore* that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." 538 U.S. at 531. More recent cases indicate detention under § 1226(c) is generally longer than that, and the Northern District of Texas found, "[w]hile there is no bright-line test,[] continued detention is likely constitutionally suspect by at least the twenty month mark." *M.D.F.*, 2020 WL 7090125, at *1 (Comparing two cases finding an eighteen-month detention was permissible with seven cases granting relief on detentions ranging from fourteen to twenty-six months and concluding, "[t]hus, twenty-two months by itself may be constitutionally impermissible without [even] addressing the other factors.") (collecting cases). At the least, the undersigned Magistrate Judge finds the length of Petitioner's detention weighs in his favor.

**Likelihood of continued detention.** Petitioner is likely to remain detained for the foreseeable future. His application for cancellation of removal has been denied and is currently on appeal to the Fifth Circuit. He will remain detained until that decision is

issued, which could take months and add more time in detention. This likelihood of continued detention further supports a finding of unreasonableness.

**Reasons for delay.** This factor is neutral. There is no allegation of alleged legal errors on the part of the Government requiring remand (and continued detention while they are resolved). Likewise, Petitioner's appeals and applications for discretionary relief should not be held against him and he has not sought any sort of substantial continuance in any of his proceedings. *See German Santos*, 965 F.3d at 212; *M.D.F.*, 2020 WL 709125, at *2 ("The parties and the Magistrate Judge all appear to agree that no one has caused any delay in M.D.F.'s detention because of bad-faith tactics. Had M.D.F. engaged in bad-faith delay tactics and thus drawn out the length of detention, there might be grounds to find the current detention reasonable. But that does not appear to be the case.") (*citing Thompson v. Edwards*, 2018 WL 4442225, at *3-4 (D.N.J. Sep. 17, 2018) ("In the absence of any indication of delay tactics on the part of the Petitioner, it appears that her ongoing [twenty-six month] detention has become so unreasonably long as to amount to a denial of due process.")).

**Conditions of confinement.** As to his conditions of confinement, ICE has housed Petitioner at two detention centers, and he is currently housed at the Prairieland Detention Center in Alvarado, Texas. The record contains no information about the conditions at either of these facilities, and the undersigned Magistrate Judge declines to speculate. This factor supports neither side. *See Saint Jacques v. Department of Homeland Security*, 2021 WL 4494623, at *3 (M.D. Penn. Sept. 30, 2021) ("Respondents provide no evidence, details, or elucidation on Saint Jacques' current conditions of confinement other than to

state that he is 'not in a cell let alone a prison[; h]e is in an ICE detention center. While that may be true, Respondents do not explain how such detention-center conditions differ from those found in a prison setting. Nevertheless, it must also be noted that Saint Jacques has failed to even mention this factor. Accordingly, this final consideration does not support either side's argument.").

**Other considerations.** The undersigned Magistrate Judge further notes that Petitioner does not appear to have a valid defense to removal based on his convictions and the limited evidence before the Court. Additionally, the Petitioner's domestic violence convictions certainly constitute a serious crime of moral turpitude. However, Petitioner appropriately points out that he spent no time incarcerated for his convictions, and provided documentation that he served only probation and successfully completed it, that he successfully completed a domestic batterer's intervention program, and that he is described as a "model probationer." *See* Docket No. 17, p. 20.

In sum, two factors weigh in favor of unreasonableness, two are neutral, and the additional considerations both raise points in favor of and against reasonableness. Under the totality of circumstances, the undersigned Magistrate Judge therefore finds that Petitioner's detention has become unreasonable without a *bona fide* bond hearing. Accordingly, the undersigned Magistrate Judge further finds that Petitioner's Amended Petition for Writ of Habeas Corpus should be granted to the extent he should be entitled to a *bona fide* bond hearing within thirty days of this Report and Recommendation becoming final by Order of the District Judge, and that the Government should bear the burden of proof by clear and convincing evidence as to whether Petitioner poses a flight risk or a

danger to the community. *See German Santos*, 965 F.3d at 213 ("He is thus entitled to a bond hearing to gauge whether he still needs to be detained to keep him from fleeing or committing more crimes.").

Based on the recommendations above, the undersigned Magistrate Judge further recommends that Federal Respondent's Response in Opposition to Petitioner's Petition for Writ of Habeas Corpus [Docket No. 9], characterized as a Motion to Dismiss, should be denied. Finally, the undersigned Magistrate Judge notes that Petitioner seeks substantially the same relief in his Petition as in his Motion for Preliminary Injunction [Docket No. 19]. Accordingly, the undersigned Magistrate Judge finds that the decision on his Petition, if affirmed, would moot his Motion for Preliminary Injunction.

## Conclusion

Accordingly, the undersigned Magistrate Judge hereby recommends that Petitioner's Amended Petition for Writ of Habeas Corpus Pursuant to 2241 and his Complaint for Declaratory and Injunctive Relief for Release from Unlawful Immigration Detention [Docket No. 7] be GRANTED to the extent Petitioner is entitled to a *bona fide* bond hearing within thirty days of this Report and Recommendation becoming final and that the Government should bear the burden of proof by clear and convincing evidence, but DENIED as to all other relief requested. Additionally, the undersigned Magistrate Judge hereby recommends Federal Respondent's Response in Opposition to Petitioner's Petition for Writ of Habeas Corpus [Docket No. 9] and Petitioner's Motion for Preliminary Injunction Directing Release from Custody or in the Alternative for Expedited Determination of Habeas Corpus Petition [Docket No. 19] be denied. Any objections to

this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

    DATED this 16th day of December, 2022.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**